IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 14, 2009

**ELROY GAINES v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 01-03286     James M. Lammey, Jr., Judge**

---

**No. W2008-01341-CCA-R3-PC  - Filed August 5, 2009**

---

The petitioner, Elroy Gaines, appeals the Shelby County Criminal Court's denial of his petition for post-conviction relief. Following a jury trial, he was convicted of aggravated sexual battery, a Class B felony, and was subsequently sentenced as a career offender to thirty years in the Department of Correction. On appeal, the petitioner argues that he was denied his right to the effective assistance of counsel based upon counsel's failure to: (1) properly investigate the case and prepare for trial; (2) adequately communicate with the petitioner; and (3) properly preserve appellate issues. Following review of the record, the judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ALAN E. GLENN and J.C. MCLIN, JJ., joined.

Juni Ganguli, Memphis, Tennessee, for the appellant, Elroy Gaines.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; William L. Gibbons, District Attorney General; and Greg Gilbert, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

The relevant underlying facts of the case, as established on direct appeal, are as follows:

The thirty-five-year-old victim, Renita Brown, testified that on July 14, 2000, she left her mother's residence with the [petitioner] in order to purchase marijuana. She stated the [petitioner] grabbed her and pulled her into an alley and, when she started screaming, punched her in the eye. Brown testified the [petitioner] took her to a park where he choked her and made her perform oral sex on him. She stated the [petitioner] forced her to accompany him to an empty house, where the [petitioner]

again forced her to perform oral sex on him. Brown stated she had oral sex with the [petitioner] because he threatened to kill her with a brick he was holding. She stated the [petitioner] beat her with his fist on her legs, choked her, covered her mouth with his hand, and forced her to have vaginal intercourse "for hours" before she finally "passed out." . . . .

Paulina Perkins, the victim's mother, testified that on the morning of July 14, the victim appeared at her house bruised and bleeding with her clothes "tore off of her." Perkins stated the victim said she had been beaten by the [petitioner].

*State v. Elroy Gaines*, No. W2003-01442-CCA-R3-CD (Tenn. Crim. App. at Jackson, Mar. 30, 2004). At an examination the following morning, it was noted that the victim had a contusion on her forehead, a swollen and bruised left eye, bruises on both sides of her arms, and a very large wound on her right hip. *Id*. Medical personnel were unable to perform a genital examination because there was "so much swelling" and the area was "very tender and very painful." *Id*. It was noted that the victim's injuries were consistent with a forcible rape having occurred within the day prior to the examination, and testing on a vaginal sample taken from the victim matched the petitioner's DNA. *Id*. The petitioner acknowledged that he had sexual intercourse with the victim but stated that it was consensual. *Id*. He further admitted that he had beaten the victim but contended it was only after she commented that he was involved in his nephew's murder. *Id*.

A Shelby County grand jury indicted the petitioner for two counts of aggravated kidnapping and two counts of aggravated rape. Following a jury trial, he was acquitted on three counts and found guilty of aggravated sexual battery, as a lesser offense of aggravated rape, on the remaining count. He was subsequently sentenced as a career offender to a term of thirty years in the Department of Correction. A direct appeal was filed, challenging only the sufficiency of the evidence, and a panel of this court affirmed the conviction. *Id*. Subsequently, the petitioner filed a timely *pro se* petition for post-conviction relief alleging, among other grounds, that he was denied his Sixth Amendment right to the effective assistance of counsel. Following the appointment of counsel, an amended petition was filed, and a hearing was conducted at which the petitioner, two trial counsels, and appellate counsel testified.

**Post-Conviction Hearing**

The first witness to testify at the hearing was the assistant public defender appointed to represent the petitioner ("trial counsel"). Trial counsel was the division head of the major violators unit, where the petitioner would be tried based upon his prior convictions for voluntary manslaughter, attempted assault with rape, receiving and concealing stolen property, accessory after the fact, murder in the perpetration of a robbery, grand larceny, burglary of a building, and seven counts of aggravated assault. Trial counsel explained to the petitioner that, if convicted, he would be sentenced as a career offender and could be subject to "60 years, mandatory."

Trial counsel testified that she was appointed to represent the petitioner on April 1, and that his first report date was May 11. She acknowledged that the only pretrial motion which she filed, the discovery motion, was not filed until May 23, after the first report date. However, she related that the general practice in the major violator's unit was for the State to prepare the discovery packet and give it to defense counsel at arraignment. Trial counsel specifically testified that she received a discovery packet prior to the petitioner's report date in this case. The motion she subsequently filed was precautionary following reindictment of the petitioner.

Trial counsel stated that she worked more than seventy-five hours on the petitioner's case. She also testified that she visited with the petitioner at the jail on at least two occasions, as well as at various report dates. Additionally, when the petitioner wanted to see trial counsel, he would notify her and he would then be brought to the courtroom for a meeting. According to trial counsel, this occurred at least four or five times. In the four months prior to the trial, trial counsel recalled meeting with the petitioner "at least a couple of times per month." Additionally, trial counsel requested an additional assistant public defender sit as second-chair on the case and met with him on numerous occasions to go over the file. Trial counsel also utilized the services of an investigator in her office.

According to trial counsel, before the trial began, she and the investigator met with the witnesses they were able to locate. She testified that the defendant had previously given them a list of witnesses but failed to include addresses, phone numbers, or, in some instances, last names. She testified that the petitioner complained to the trial court regarding her failure to interview witnesses and requested that she be relieved based upon her failure to investigate. However, the trial court explained to the petitioner that trial counsel and the investigator were unable to conduct the investigation based upon the information he had supplied. The petitioner then supplied trial counsel with a more thorough list, and she and the investigator interviewed the witnesses they could locate. However, according to trial counsel, none were eyewitnesses to the crime and did not provide any useful information for the petitioner's defense. Trial counsel acknowledged that she did not speak with the victim but testified that it was a strategic decision. The victim had previously given two contradictory sworn statements, which trial counsel intended to use to impeach the victim's credibility. Trial counsel also testified that she investigated the victim's criminal history prior to trial.

Prior to trial, counsel advised the petitioner that his previous criminal convictions could be used to impeach him and advised him against testifying, advice which the petitioner did not follow. However, trial counsel testified that she did prepare the petitioner for testifying by telling him what to expect; however, she did not conduct a mock cross-examination with him.

During jury deliberations, the jury asked a question regarding the instructions for aggravated rape and rape. As a result of that question, the trial court altered the instructions. According to trial counsel, the element of bodily injury had inadvertently been included in the charge for rape. The court removed the improper element from the charge. Additionally, the court added the element that the victim did not consent to the charge for aggravated rape. The court stated that it made this

addition because the instruction, as written, would allow the jury to believe the petitioner and still convict of aggravated rape. Trial counsel did not object to the addition, despite the fact that the added element was not prescribed by statute as it added an additional element, thus increasing the burden on the State. As noted, the jury found the petitioner not guilty of aggravated rape and rape, convicting him only of the lesser offense of aggravated sexual battery. No amendment was made to the charge for the lesser offense.

Next to testify was second-chair defense counsel. He testified that he was brought in later in the case "basically to run interference between trial counsel and [the petitioner] and to answer any questions the petitioner might have regarding the trial." He testified that he recalled that the witnesses suggested by the petitioner were not helpful to his defense. Finally, he testified that no objection was made to the altered jury charge, as it inured to the defendant's benefit by increasing the State's burden of proof.

Appellate counsel was also called to testify at the hearing and stated that the only issue raised on direct appeal was sufficiency of the evidence. When questioned regarding the jury instruction alteration, appellate counsel stated that he did not see anything improper and that he certainly would not appeal something the petitioner was acquitted of, stating there was no basis to complain after the petitioner had been acquitted of aggravated rape. Appellate counsel stated that he communicated with the petitioner by letter, sending copies of his brief and transcripts to the petitioner.

Finally, the petitioner testified and acknowledged that he had informed trial counsel that he had sex with the victim and beat her, although he claimed the sex was consensual. He further acknowledged that this was the strategy pursued by trial counsel. He complained that he did not receive discovery material "for about three months" following counsel's appointment. The petitioner went on to state that he filed multiple motions, which were ruled upon by the trial court, because trial counsel did not file any. He testified that he gave trial counsel the names of four or five witnesses and that she made no effort to speak with them. According to the petitioner, trial counsel stated there was no need to speak with the additional witnesses because the victim had told so many lies. He further testified that trial counsel never visited him in jail and failed to respond to his numerous letters. He testified that he asked that trial counsel be removed from his case and that he made a complaint to the Board of Professional Responsibility. He claimed that he met second-chair counsel about five days prior to trial and that neither attorney prepared him for cross-examination. He acknowledged that he testified against the advice of counsel. He also testified that neither attorney answered his questions during the trial. When he asked why they failed to object to the alteration of the jury charge, they told him that the trial judge "ran the courtroom" and could do what he wanted.

According to the petitioner, trial counsel informed him that sufficiency of the evidence was the only issue that would be raised on appeal. He testified that he wrote numerous letters to appellate counsel but did not receive a response before the appeal was filed. The petitioner believed that the jury instruction issue should have been included in the motion for new trial and should have been raised on appeal.

-4-

After hearing the evidence presented, the post-conviction court found that the petitioner had failed to establish his claim of ineffective assistance of counsel. Following the denial of his petition, the petitioner filed the instant timely appeal.

**Analysis**

On appeal, the petitioner asserts that the post-conviction court erred in denying his petition for post-conviction relief. Specifically, he contends that the court erred in finding that trial counsel was not ineffective based upon trial counsel's failure to: (1) properly investigate the case and prepare for trial; (2) adequately communicate with the petitioner; and (3) properly preserve appellate issues. To succeed on a challenge of ineffective assistance of counsel, the petitioner bears the burden of establishing the allegations set forth in his petition by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). The petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984), the petitioner must establish (1) deficient performance and (2) prejudice resulting from the deficiency. The petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

It is unnecessary for a court to address deficiency and prejudice in any particular order or even to address both if the petitioner makes an insufficient showing on either. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069. In order to establish prejudice, the petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999) (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *Id.* at 461. "[A] trial court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). However, *conclusions of law* are reviewed under a purely *de novo* standard with no presumption that the post-conviction court's findings are correct. *Id.*

Following the presentation of evidence at the post-conviction hearing, the court made the following findings with regard to the amendment of the jury charge:

And basically, [the trial court] made it - - gave the State something else they had to prove which they were unable to prove and because of that, [the petitioner] did not get - - if he was found guilty of an A felony as a career offender, he'd be facing 120 years right now. . . . And but for the fact that apparently [the trial court] did the right thing, he went on about it, talking about what he should do and that basically if he did not do what he did, in his opinion he thought the defendant would get convicted and he thought it was the appropriate thing to do.

To object to that by defense counsel, frankly I think would be - - that would have been ineffective assistance of counsel if they would of objected to it, you know, and if they had prevailed. So I don't see how anything the defense counsel did actually injured [the petitioner.]

In its written order denying relief, the post-conviction court further found:

[The p]etitioner contends that counsel failed to timely secure discovery materials in time to adequately investigate the case. [Trial counsel] testified that the discovery motion was filed May 23, 2001. [Trial counsel] further testified that discovery packets were usually already prepared, enabling counsel to get the discovery materials on arraignment date. The later motion for discovery was a protective measure to ensure counsel had received all materials. This Court finds that [trial counsel] exercised reasonable professional judgment in securing the discovery materials.

. . . .

[The p]etitioner claims counsel failed to conduct a full and adequate pre-trial investigation. Specifically, [the p]etitioner contends that counsel did not interview potential witnesses and ignored important aspects of the investigation, including the consensual past relations between [the p]etitioner and the victim. [Trial counsel] testified that she submitted the case for investigation and she met with witnesses she was able to find. [Trial counsel] also testified that [the p]etitioner did not supply addresses or phone numbers for witnesses, nor did [the p]etitioner provide last names until shortly before trial. This court finds that [trial counsel] exercised reasonable professional judgment and that the representation did not fall below an objective standard of reasonableness.

. . . .

[The p]etitioner contends that counsel was ineffective for failure to meet with [the p]etitioner as necessary. . . . [Trial counsel] testified that she met with [the p]etitioner in the jail on at least two occasions. [Trial counsel] also testified that she met with [the p]etitioner another four or five times on non-trial or report dates in the

-6-

courtroom. This Court finds that [the p]etitioner has failed to prove how [trial counsel] acted below an objective reasonable standard.

. . . .

[The p]etitioner contends that counsel did not object to the trial court's amending the jury instructions, waiving the issue for appeal. [Trial counsel] testified that she did not object to the jury instruction amendment because it added an element the State to prove. [Second-chair counsel] testified that adding the element was a benefit for [the p]etitioner. [The p]etitioner has failed to prove how counsel's action fell below an objectively reasonable standard.

Appellate Counsel failed to raise the jury instruction amendment issue under plain error, thus waiving the issue. [Appellate counsel] testified that he would not raise something on appeal if a defendant was acquitted. As [the p]etitioner was convicted of a lesser included offense, [appellate counsel] made a tactical decision to not appeal this issue. This Court finds that [appellate counsel] exercised reasonably objective representation.

## I. Failure to Investigate and Prepare

On appeal, the petitioner first contends that trial counsel was ineffective for failure to properly investigate and prepare the case. Specifically, he asserts that trial counsel failed to timely file appropriate discovery motions, properly investigate defense witnesses, and interview prosecution witnesses, specifically the victim. He argues that "in this multiple offense felony case, [trial counsel] filed only one pre-trial motion, investigated witnesses only a few weeks before trial, and chose to not investigate the victim in the twenty[-]two[-]month period that [the petitioner] awaited trial."

With regard to the discovery motion, trial counsel, as observed by the post-conviction court in its findings, testified that she received a discovery packet from the State prior to the filing of the motion, which the petitioner ignores in his argument. Trial counsel also specifically stated that the motion was filed only as a protective measure to insure that she was in possession of all relevant information following reindictment. Clearly, based upon its findings, the post-conviction court accredited the testimony of trial counsel, and it is not the province of this court to reweigh or reevaluate such a determination. *See Henley*, 960 S.W.2d at 579. Regardless, the petitioner failed to put forth evidence of any discovery material which was not timely received that would have aided in his defense. With regard to his argument that trial counsel filed only one single motion in the case, the petitioner has likewise failed to present proof that any such motion would have inured to his benefit. In fact, the record establishes that multiple motions were filed by the petitioner and denied by the trial court.

Likewise, with regard to the petitioner's assertion that trial counsel only interviewed witnesses immediately prior to trial, trial counsel gave a valid explanation as to why this occurred,

which the post-conviction court again accredited based upon its findings. According to trial counsel, the petitioner failed to provide them with enough information to locate the witnesses. Immediately after the trial court instructed the petitioner to provide the information, trial counsel and an investigator began interviewing the witnesses. Trial counsel cannot be held responsible for the petitioner's failure. Moreover, both trial counsel and second-chair counsel testified that the witnesses they interviewed were not eyewitnesses to the crime and were unable to provide any useful information to the defense. Because the petitioner failed to present these witnesses at the post-conviction hearing, both this court and the post-conviction court are unable to determine what their testimony would have been. It is the petitioner's burden to present such witnesses. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).

The petitioner also contends that trial counsel was ineffective in failing to investigate the victim. However, he offered no proof of what such investigation would have revealed. *See Black*, 794 S.W.2d at 757. Moreover, trial counsel testified that she did review statements made by the victim, as well as the victim's prior criminal history. After adequate preparation, trial counsel chose to pursue a valid strategy of impeachment based upon inconsistencies in the victim's statements, which was apparently successful at trial. *See Cooper*, 847 S.W.2d at 528. This issue is without merit.

## II. Adequate Communication

Next, the petitioner contends that trial counsel failed to adequately communicate with him, based upon their poor working relationship, and asserts that trial counsel was "scared of her client." While the petitioner testified that trial counsel rarely met with him and failed to respond to his correspondence, the post-conviction court, again accrediting the contradictory testimony given by trial counsel, found that trial counsel had sufficiently met with the petitioner. The record supports this finding, as trial counsel testified that she met with the petitioner on at least two occasions at the jail, another four or five times in the courtroom on non-report dates, and wrote the petitioner several letters advising him of the status. Trial counsel also testified that between December of 2002 and March of 2003, she met the petitioner "at least a couple of times a month." While trial counsel acknowledged that she and the petitioner had a poor working relationship, she continued to represent him. Moreover, following the petitioner's complaint to the trial court, a hearing was held at which the petitioner eventually agreed that she should continue with her representation. Based upon the record before us, we are unable to conclude that the record preponderates against the post-conviction's courts finding that the petitioner failed to establish how trial counsel acted below an objective reasonable standard.

## III. Appellate Issues

The petitioner also contends that his attorneys failed to properly preserve grounds for appeal, specifically, by failing "to object to alterations made to the jury instruction, to include all issues in the motion for new trial, and further to properly investigate all grounds for appeal." He also contends that appellate counsel was ineffective by failing to "fully familiarize himself with the client

and with the technical record before filing the appeal." However, nothing preponderates against the post-conviction court's findings with regard to this issue. All the attorneys involved in the petitioner's representation testified that the alteration of the charge inured to his benefit by requiring an additional element to be proven by the State. Moreover, the petitioner was not convicted of the crime for which the charge was amended. Thus, the petitioner cannot show prejudice based upon the amendment or how counsel was deficient for failing to preserve or raise the issue. Furthermore, the petitioner has pointed to no other issues which would have been meritorious if raised on appeal; indeed, he has pointed to no other appealable issues. The petitioner bears the burden of establishing the merits of a claim, which was not appealable, in order to be entitled to relief. *Carpenter v. State*, 126 S.W.3d 879, 887 (Tenn. 2004). This issue is without merit.

Finally, the petitioner, conceding "that [while] each alleged deviation perhaps does not individually warrant a determination of ineffective assistance of counsel[,] [t]he cumulative effect of these errors, however, illustrates prior counsel's ineptitude." We disagree. The petitioner has failed to carry his burden that his counsel deviated from the required standard of assistance. Thus, there can be no cumulative effect.

## CONCLUSION

Based upon the foregoing, the denial of post-conviction relief is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE